All right, our fifth case for this morning is Garcia-Martinez v. Sessions. How do you pronounce your last name? Oderchek. Oderchek. Okay. Good morning. May it please the Court. My name is Dovrin Oderchek. I am the attorney for the petitioner, Mr. Garcia-Martinez. The sole issue on appeal is whether his conviction for aggravated assault in the third degree under New Jersey law qualifies as a crime involving moral turpitude that would render him inadmissible and therefore render him ineligible for cancellation of removal. The parties do agree that the categorical approach applies, not the modified. There's no issue about whether the elements are indivisible. There are three elements to this offense. The defendant caused bodily injury to another. The defendant caused bodily injury by use of a deadly weapon. And the defendant acted purposely or knowingly. I think that we all probably know that really the issue here is the element on the deadly weapon. I would note that on the bodily injury component, New Jersey law defines that to mean pretty much not a lot. So can I ask you whether your primary argument is that as New Jersey, I mean New Jersey could define this term however New Jersey wants to define it, but if New Jersey has defined everything from your index finger to your foot to maybe your sputum as a deadly weapon, it is making a definition that's broader than the generic definition and therefore can't count as a crime of moral turpitude for immigration purposes. Is that the essence? That is the essence of the argument. And do you want to say anything about the board's reliance on accomplice liability? I do. I mean, I would disagree with sort of how they saw that. They took the position of like, well, since there was accomplice liability, we don't know if there was some sort of deadly weapon that was used that wouldn't be discussed in the plea colloquy. All right, so there's nothing about the accomplices in the plea colloquy that you've given us that suggests so much of the paperweight, you know, being held. Well, right, and I think that if you look at the plea colloquy, when the judge says, does your client understand accomplice liability, he says that right after explaining that, you know, your role is that you tricked the individual. He fell to the ground. Two other individuals then started hitting and kicking him, and that you left. And I think that that sort of context, I think accomplice liability can mean one or two things or both. One was that he's liable for these individuals hitting this person on the ground, but separately and or is that, you know, he had a duty to, at that point, intervene and try to stop these other individuals from hitting him because he started everything by tripping the individual. And so that really is, Your Honor, you did kind of summarize sort of my argument. I understand that there is a body of case law that's not exactly in favor of my client, and I sort of acknowledge that through every stage of litigation. If the court grants this petition for review, I don't think that that's really going to perturb that body of law because I think that what we have here is such an outlier as far as a factual basis for use of a deadly weapon that I just don't see this creating a problem for future cases. Oh, yes, it does. It declares any conviction under this New Jersey statute categorically not a crime of moral turpitude. Well, that's correct. This is not a decision that's limited expressly to your client because all he did was trip the victim. Correct, correct. And in that sense, the De Silva framework or Silva-Trevino framework that the board has set up for the categorical method really resembles the modified categorical method and a factual inquiry, which is problematic in the context of counting convictions. Let me draw back a little bit for that. I agree with you. The one thing I would say in response to that is that 20 years ago there was a judge and a prosecutor in that courtroom, and these facts were laid out, and they found that factual basis was sufficient for this offense. And so when we talk about full faith and credit, it's not only just that Mr. Garcia-Martinez, he can't come in here and say, well, I was innocent. I think that it cuts both ways that the government can't say, well, there's got to be some sort of other facts involved here, especially when we look at New Jersey law. You know, I'm from Wisconsin. Does your client bear the burden on that question, though, at the end of the day? I mean, in a way that may be mighty unsatisfying, but doesn't he have to show that, you know, the underlying conviction here did not entail conduct involving moral turpitude? And we haven't yet, but if we were to adopt Silva-Trevino III from October 2016, we're bound by the record of conviction here, and you have an accomplice liability in place. The problem that Mr. Garcia-Martinez has is that, and I was just going to mention this, is that in Wisconsin, you know, I've reviewed hundreds of plea colloquies in Wisconsin, and in most cases the judge simply says, you know, can we rely on the criminal complaint for the factual basis? New Jersey is quite different. They actually require the defendant to be personally questioned at the plea colloquy. And that he has to affirmatively acknowledge what the facts are to meet every element. So the problem that Mr. Garcia-Martinez would have in this situation is that, and the immigration judge said the same thing, and the board said the same thing, is what else can he do? Because this is New Jersey law. There isn't anything else that he could do to say, well, let me show this. The plea colloquy is basically where the factual basis of this plea is, and so could I just say, I mean, I'm looking at this page five of this little plea colloquy. I understood the New Jersey judge to be doing something relatively straightforward. First the judge says, now your role, you say, was tripping the victim, and he fell to the ground. Is that right? The defendant says yes. Okay, fine. Tie a bow on that. Then the court says, while he was on the ground, some of your friends punched him, kicked him, and struck him. Is that correct? Defendant says yes. And so I understand the New Jersey judge simply to be saying that this defendant is responsible, not just for the tripping, but for the friends punching, kicking, and striking. Correct. And that's the only context we have in this plea colloquy. And so then that takes you to the board, which speculates that maybe these punchers, kickers, and strikers were bearing a deadly weapon, but there's no evidence that the New Jersey judge thought that they were, and there's no evidence that they were. That's correct. And so in the face of no evidence, we have to decide, what do you do? Do you assume it's a gun, or do you assume it's your fist? It's a little bar brawl. Well, again, I think that if we're going to give any meaning to how Duane S. Oliver has set up the realistic probability test, that the facts are the facts in this. And, you know, the term that Duane S. Oliver has used is They're inconclusive, though, right? Because it's possible that the facts show more punching when he was on the ground. It's also possible that there was pistol whipping or he got hit with a baseball bat. Then we get into sort of this judicial imagining. Well, I wonder, do you get into, well, how do you deal with who bears the burden? And part of the burden comes from the statute here. Right. I think that the burden would actually be on, and I've gone past my time, but I would say that the burden of indemnizability initially is on the government by clearing and convincing evidence. No, I mean the burden if at the end of the day you say we just have an inconclusive record. We don't know the full facts on accomplice liability. But, again, I think the problem is that to define it as an inconclusive record when New Jersey requires that you set forth a factual basis, it puts Mr. Garcia-Martinez in a no-win situation. Well, we're not going to assume the New Jersey judge failed to comply with New Jersey law. That's certainly not. And I'm sorry, I don't think that 10 seconds discussing the constitutionality is really going to make much of a difference. That's all right. I'll give you a minute to rebut, and I think I'll ask you to let us turn this over to your opponent now. Thank you. Mr. Tennyson. Good morning. May it please the Court. I think this Court has already honed in on the issue. This is a case involving accomplice liability. But, you know, here's what bothers me, Mr. Tennyson. I've stared and stared at this language in the Board's order that as an accomplice, responsibility is liable for the actions of his co-defendants. Okay, so far so good. Who may have been the ones bearing the deadly weapon. Now, I have a big problem assuming, you know, maybe the co-defendants had, you know, a grenade in their hand. Maybe the co-defendants, you know, were carrying a PEZ dispenser that you could have poked somebody in the eye with. I mean, this is, I just can't read from the deadly weapon the inference that something that federal generic law thinks of as a deadly weapon as opposed to New Jersey, which may think that your fist is a deadly weapon. But I have another problem. If it's just your fist or when you spit on somebody, it's a deadly weapon because maybe the sputum gets in the eye or it's your index finger because you poke them. To me, there is no meaning left to the term at all. Right. Let me take that second point first. Under New Jersey law, it can't just be. I mean, there are cases which have, you know, what we think of as conventional deadly weapons. The second brand of cases are going to be things that are dependent upon their use, particularly deadly weapons. And those have to cause serious bodily, those have to be intended or used in a way that will cause serious bodily injury. So what about a fist? So a fist, that's the thing. We don't know under New Jersey law. I'm asking you, somebody has to know this. Right. Because in his case, it is the fist. And the fist is more, well, the deadly weapon requirement under federal law does not seem to encompass a fist. All we're talking about is whether he gets some sort of exercise of discretion. He may well be turned down. I mean, this is a threshold legal question about whether this old term from the common law of moral turpitude applies to a bar fight. Right. So the difficulty is New Jersey hasn't settled that question, at least when it comes to non- So why not use the principle in immigration law that you construe, as well as the principle of lenity, and say, construe this in favor of the alien. Let's move on to the exercise of discretion. That's a well-established principle of immigration law. But when it comes to the petitioner establishing his eligibility for relief, when he is coming in and showing his own record to establish that his construal of the state statute goes beyond the generic deadly weapon definition, he has the obligation to show that he is eligible for relief. Of course he does, and he has given you the, which you couldn't find, apparently, the plea colloquy that was the necessary part of the New Jersey proceeding. And he has made it clear, we're not really worrying about the tripping anymore because we seem to have moved over to accomplice, that a bunch of his friends are beating up this guy who's now down on the floor. And the New Jersey judge would be remiss if the New Jersey judge didn't develop the record any further, a presumption of procedural regularity, and also a presumption that doubts are construed in favor of the alien, tells you that this is, in fact, a law that's broader than the generic law. We wouldn't go so far as to say that. I know you don't say that, but you would just say that walking down the street you're a deadly weapon. So, you know, everybody is a deadly weapon. We would not say that. Our point is, is that under New Jersey law, deadly weapon means what we would think of before he can show that. You just told me you didn't know what it meant under New Jersey law. Under New Jersey law, we have a definition that involves intent or sort of use of an implement, material, some other object in a way that causes serious bodily injury. And what we're trying to do is figure out whether or not that extends beyond the generic definition of the offense. And can you give me what you think the generic definition of the offense is? What's the generic definition of deadly weapon? I think that the generic definition, or at least the things that the Board hangs its hat on, in the crime involving moral turpitude, I guess what, circumstances. So has the Board told us a nice, clean definition if we were inclined to follow what the Board said? With regard to deadly weapon, I think we can go back to even matter of oath, and Wu is a recent, I guess what, intent case. But the crucial thing in matter of oath is 3INN. Or even Sunuda, which I believe is... It's all in this paragraph on page 2 of the opinion. So deadly weapon is what? Does that deadly weapon have to be something you can hold? Or is it you? Are we all deadly weapons in the right situation? I believe the crucial... According to the Board. And this is something that the Board would have to determine if this goes back. Because the Board didn't address this. So you're telling me that right now the Board has no definition of deadly weapon? Right now, the Board's definition of deadly weapon has to do with an instrument or something that would cause serious bodily injury. Does it have to be a separate thing from the human body that you occupy? I don't know if the Board has decided that issue. And, in fact, it put that issue aside in its decision. It says, we don't have to determine whether. And I'm not sure that they could punt it, actually. Because it strikes me that if the Board's own definition requires it to be an instrument of some kind, we have a different case from the one that if the Board thinks that we're all... If my glasses are a deadly weapon because I can take them off and poke somebody in the eye with it, then it's hard for me to see what the limiting factor is. I think there are almost due process problems there, but be that as it may. I believe what the Board was trying to do was just say that this was within the context of what historically it is found to be a deadly weapon. But they don't know whether the code... There's nothing in the record to show that the accomplices were doing anything but using their body. I read the Board to say we just don't know the answer to the question. And we don't know as we sit here. We don't have any idea what happened with the accomplices. That is correct. And so when you have... And I don't know if it's fair to characterize that as an inconclusive record or not. You may have a view on it. But faced with the record we have, who wins and who loses? We're not going to answer the question. We don't know what the deadly weapon was or was not. It's up to him, one, under joint assault arrest to articulate the non-generic definition. So if we were to take the New Jersey judge's description of what the accomplices did, hit, punch, and struck, and we said, well, that's the record, and we understand what those words are, then we do have a record. And then we'd maybe, according to you, would need to send it back to the Board to see if the Board thinks that those actions satisfy its notion of deadly weapon. I think if this Court came down and said that the petitioner had shown, sufficiently shown, that a foot was, or the hitting, punching, and striking, just hands, were a deadly weapon. Common dictionary meanings of those three words. Right. The Board would then need to determine whether or not that's a deadly weapon. The Board could decide whether that counted. But again, that record, we just don't know. Well, we know the words the New Jersey judge used, and what we're debating is whether those words are sufficient in and of themselves, or whether all people have committed crimes of moral turpitude whenever state records are bad. It's up to him, under joint assault arrest, and under the burden of proof.  So all people, unless he can come in and you have bad, it's unfortunate, but if you have bad records, that's going to fall against the person who is articulating the non-generic application of the offense. That is correct, Your Honor. And I would say, there is some indication, I won't go too far into it, that maybe we have more than just non-generic. I mean, it is, after all, punched, kicked, and struck. Punch, well, there, there's your fist. Kick, there's your foot. What is struck? I just struck my hand. You struck your hand with your fist. I mean, the thing is that that gives you some sort of indeterminacy, doesn't it? No. I mean, okay. Or at least, insofar as this record goes, it gives some openness. Well, it's also an open question in terms of board case law, what the board considers a deadly weapon, right? We know only that the board considers assault with a deadly weapon to be a crime of moral turpitude categorically, but what falls within the definition of a generic deadly weapon, the board has not spoken. Right. And the board has not, has sort of punted on the issue in this case as well. So we've got an open legal question on the baseline. Right. Generic offense as well as what New Jersey accepts as a deadly weapon. We know what the statutory definition is, but we don't know how this particular case fits within the statutory definition. Right. And some of this comes up as a result of the way in which this case arose. I mean, the way it came up below is that he argued that his foot was the deadly weapon, right? That that was the non-generic use of the deadly weapon statute. And the board then responded by saying, it wasn't your foot. You were an accomplice. It was whatever these other individuals did, and we don't know based upon that how to evaluate this. So given that, I mean, the board, given what the board was confronted with, their determination that this, that in this instance, New Jersey's generic definition went beyond what they had historically considered to be the generic definition of the offense, that the petitioner hadn't done that or had not established that. The court has no further questions. All right. Apparently not. Thank you. And I think, I'm not sure if you ran out, but I told you that you've got, I'll give you a minute. Just very briefly, I believe what the court should do is grant this petition and vacate the board's decision and just send this back to the immigration court so Mr. Garcia Martinez may pursue cancellation. I think that's what this court should do. Are there any other questions? I didn't really get into the constitutional issue, but it was fun. All right. Thank you very much. Glad you thought it was fun. We will take the case, I hope Mr. Tennyson did too, and we will take the case under advisement.